**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILBUR WILKINSON,**<br><br>**Plaintiff-Petitioner,**<br><br>**v.**<br><br>**TOM VILSACK,**[1]<br>**Secretary of Agriculture, et al.,**<br><br>**Defendants-Respondents.** | **Civil Action No. 08-1854 (JDB)** |

**MEMORANDUM OPINION**

Petitioner Wilbur Wilkinson brings this action on behalf of his parents, Ernest and Mollie Wilkinson, for a writ of mandamus directed to respondents Tom Vilsack, the Secretary of Agriculture, and the United States Department of Agriculture ("USDA"). Wilkinson contends that respondents have a duty to pay damages resulting from an administrative adjudication concluding that USDA discriminated against his parents. Now before the Court is respondents' motion to dismiss the verified petition for a writ of mandamus.

**BACKGROUND**

Wilkinson's parents, Mollie and Ernest Wilkinson, now deceased, were American Indians from North Dakota. See V. Pet. for Writ of Mandamus ("Pet.") [Docket Entry 1], ¶¶ 2, 5. They allegedly filed a complaint against USDA on March 5, 1990, claiming that a predecessor of the Farm Services Agency, a component of USDA, discriminated against them in administering a USDA credit program. See id. USDA did not take any action on the Wilkinsons' complaint. In

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Tom Vilsack is automatically substituted as defendant for his predecessor as Secretary of Agriculture, Ed Schafer.

the late 1990s, however, USDA admitted that "[d]uring much of the 1980s and 1990s, USDA administrative processes for review of program civil rights complaints filed against USDA agencies by program participants did not function effectively." Administrative Civil Rights Adjudications Under Section 741, 63 Fed. Reg. 67,392, at 67,392 (Dec. 4, 1998).  In response, Congress enacted a special adjudication statute, known as Section 741, "to waive the applicable statutes of limitation for those individuals who had filed non-employment related discrimination complaints with USDA alleging discrimination during [the 1980s and early 1990s]."  Id. Pursuant to this legislation, USDA's Office of Civil Rights notified the Wilkinsons in September of 2000 that they could file a request for the 1990 discrimination complaint to be processed under Section 741.  See Pet. at ¶ 8.

The Wilkinsons filed such a request the following month, and USDA set the 1990 discrimination complaint for Section 741 processing in April 2003.  Id.  In August 2006,[2] USDA notified the Wilkinsons that their Section 741 Complaint Request was "eligible," and therefore the Wilkinsons could request an adjudication before an administrative law judge ("ALJ").  Id. at ¶ 9.  The Wilkinsons did so, and the case proceeded before senior ALJ Victor Palmer.  See id. at ¶¶ 10, 11.  The parties agreed to bifurcate this proceeding, such that the ALJ would determine liability before assessing damages.  See Pet., Exhibit B (Determination Part Two), 1.  The ALJ then found USDA liable to the Wilkinsons, concluding that the agency had discriminated against the Wilkinsons in violation of the Equal Credit Opportunity Act.  See id., Exhibit A (Determination Part One), 1.  The ALJ set a hearing to determine the appropriate damages award.

---

[2] The delays in the complaint's processing do not bear on the legal issues currently before the Court.  At least some of the delay was attributable to a still-pending class action, Keepseagle v. Vilsack, Civ. Action No. 99-3119.  Wilkinson opted out of that class.

See id., Exhibit A at 17.

Section 741 authorizes USDA's Assistant Secretary for Civil Rights ("ASCR") to review any ALJ determination, and conclude whether it will become USDA's final adjudication. See 7 C.F.R. § 15f.24(a). Here, the Assistant Secretary, Margo McKay, intervened before the damages hearing. Invoking her discretion under Section 741 to review a proposed determination, she stayed the damages hearing in order to review the liability determination. See Resp'ts' Mem. in Supp. of Mot. to Dismiss ("Resp'ts' Mem.") [Docket Entry 7], Exhibit 2 (ASCR's Order), at 2. Wilkinson opposed the stay, and filed a motion with the ALJ to proceed with the scheduled damages hearing. See Pet., Ex. B at 3. The ALJ construed McKay's "request that the scheduled hearing not be held" as "an election" that the ALJ reach a damages finding without a hearing, see id., and issued the damages determination on June 18, 2008, finding damages of $5,284,647, see id. at 6. In other words, the case proceeded on two separate tracks: as the ALJ was awarding damages notwithstanding the stay of that hearing, McKay was completing her review of the liability determination.

Wilkinson sought payment of those damages on September 5, 2008, a request that the Farm Services Agency opposed and USDA rejected. See Pet. at ¶ 18. McKay issued her final liability determination on October 27, 2008, concluding that the Wilkinsons' complaint was not eligible for Section 741 relief.[3] Wilkinson then commenced this action on October 27, 2008, for a writ of mandamus requiring respondents to satisfy the ALJ's damages award.

---

[3] McKay found that Wilkinson failed to demonstrate that his parents' complaint was timely filed. See Resp'ts' Mem., Ex. 1 (Final Determination), 5-7. McKay also addressed the merits of the complaint, finding several errors with the ALJ's damages analysis. See id. at 37.

**ANALYSIS**

Mandamus is a drastic remedy to be invoked only in extraordinary situations and granted only when essential to the interests of justice. See Oglala Sioux Tribe of Pine Ridge Indian Reservation v. U.S. Army Corps of Eng'rs, 570 F.3d 327, 333 (D.C. Cir. 2009); Chatman-Bey v. Thornburgh, 864 F.2d 804, 806 n.2 (D.C. Cir. 1988). Mandamus is appropriate only where "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (citations omitted). The party seeking mandamus has the "'burden of showing that [his] right to issuance of the writ is clear and indisputable.'" Gulfstream Aerospace Corp v. Mayacamas Corp., 485 U.S. 271, 289 (1988) (quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953)).

Respondents contend here that because the ASCR reversed the ALJ's liability determination, Wilkinson does not have a clear right to damages. See Resp'ts' Mem. at 4. In fact, they offer that "the ALJ lacked any authority to enter an award of damages because the [ASCR] had already divested the ALJ of jurisdiction by agreeing to review the liability determination." Id. at 5.[4]

Wilkinson responds that the ASCR's action was an improper "interlocutory review" of the ALJ's determination. See Pet'r's First Mem. in Opp'n to Mot. to Dismiss ("Pet'r's 1st Opp'n") [Docket Entry 11], at 5; Pet'r's Second Mem. in Opp'n to Mot. to Dismiss ("Pet'r's 2d Opp'n")

---

[4] Respondents make the additional argument that the ALJ's decision was incorrect on the merits. Because of the procedural posture of this case, the Court cannot consider this argument.

[Docket Entry 12], at 3-4.[5] Although Wilkinson concedes that the ASCR has a right to review an ALJ's determination, he asserts that the ASCR can only do so within 35 days of an ALJ's determination. See Pet'r's 1st Opp'n at 6 (citing 7 C.F.R. § 15f.24(a)). Because the parties agreed to bifurcate the ALJ's adjudication, Wilkinson claims, the ALJ could not render his determination until after the damages award. See id.; see also Pet'r's 2d Opp'n at 3-4. The ASCR's review of the liability determination was therefore an improper "interlocutory review" of an ALJ ruling. See Pet'r's 1st Opp'n at 5 (citing 7 C.F.R. § 15f.21(d)(8) ("Interlocutory review of rulings by the ALJ will not be permitted.")); see also Pet'r's 2d Opp'n at 3 (citing same). The ALJ's damages determination therefore is the USDA's final, enforceable decision according to Wilkinson.

Not so, say respondents. 7 C.F.R. § 15f.24 "expressly" permits the ASCR to review an ALJ's determination "without regard to the scope of that proposed decision." Resp'ts' Reply at 5. And even though the parties agreed to bifurcate the adjudication, "[n]othing in the regulations requires the [ASCR] to wait until there is also a proposed determination on damages." Id. at 6. Indeed, "[t]here would be no need for a damages determination if the [ASCR] reversed the decision on liability . . . ." Id. At the least, respondents suggest, the absence of specific procedures governing when the ASCR is empowered to review an ALJ determination requires the Court to give "the Secretary [of Agriculture's] interpretation of his rules . . . controlling weight." Id. at 7. Accordingly, the ASCR validly stayed the proceedings in the Wilkinsons' case and thereby divested the ALJ of jurisdiction. See id. at 9.

---

[5] Wilkinson filed two memoranda in opposition to the motion to dismiss, one pro se, and one through counsel. Because respondents do not challenge the propriety of these filings, the Court will consider the arguments raised in both memoranda. Additionally, Wilkinson noticed the dismissal of his attorney on October 26, 2009. This dismissal does not bear on the Court's decision here.

Respondents have the better of this argument.  The Court "must give substantial deference to an agency's interpretation of its own regulations."  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); see also Orion Reserves Ltd. P'ship v. Salazar, 553 F.3d 697, 707 (D.C. Cir. 2009).  It may only invalidate USDA's adjudicative procedures "if the plain language of the regulation or 'other indications of the [agency's] intent' require another interpretation.'"  See Orion Reserves, 553 F.3d at 707 (quoting Thomas Jefferson Univ., 512 U.S. at 512, and Fabi Constr. Co. v. Sec'y of Labor, 508 F.3d 1077, 1080-81 (D.C. Cir. 2007)).  A court's task "is not to decide which among several competing interpretations best serves the regulatory purpose.  Rather, the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  Thomas Jefferson Univ., 512 U.S. at 512 (quoting Udall v. Tallman, 380 U.S. 1, 16 (1965)).

There is no showing here that USDA's interpretation of the regulations governing Section 741 adjudicative proceedings was "plainly erroneous" or "inconsistent" with those regulations.  Neither the "plain language" of the Section 741 administrative procedure rules nor "other indications of the [agency's] intent" indicate that the ASCR's actions were improper.  See Orion Reserves, 553 F.3d at 707.  Indeed, the ASCR is empowered to "[m]ake final determinations in proceedings under part 15f of this title where review of an administrative law judge decision is undertaken."  7 C.F.R. § 2.25(a)(21) (emphasis added).  Hence, an ALJ decision in these cases is only a recommendation until the ASCR's review has transpired:

> The ALJ may recommend dismissal of your complaint . . . ; recommend denial . . . on the merits; or make a proposed finding of discrimination on your eligible complaint and recommend to award you . . . relief . . . .  The proposed determination will become the final determination 35 days after it is made, unless you request review of the proposed determination by the ASCR.  The ASCR also

may review the proposed determination on his or her own initiative.

7 C.F.R. § 15f.24(a) (emphases added). By this language, the ASCR arguably was authorized to review the ALJ's liability determination.[6]

Section 741's prohibition of "interlocutory review" is not plainly to the contrary. 7 C.F.R. § 15f.21(d)(8) precludes only "[i]interlocutory review of rulings by the ALJ . . . ." Although the regulations define neither "interlocutory review" nor "rulings," see id. § 15f.4, they do suggest that "rulings," as used in 7 C.F.R. § 15f.21(d)(8), refers to minor trial management decisions the ALJ makes during the adjudication. See id. § 15f.21(d)(2)(i) ("If a party objects to the admission of any evidence or to the limitation of the scope of any examination or cross-examination or to any other ruling of the ALJ, the party must state briefly the grounds of such objection."). Moreover, the prohibition on "interlocutory review" is found in the code section entitled "What rules are applicable to the actual conduct of the hearing?" See id. § 15f.21. This is in contrast to the ASCR's authority to review an ALJ determination, which is found in the code section entitled "When and in what form will a denial determination be made on my complaint by USDA?" See id. § 15f.24. Reading these two sections in concert, the prohibition on "interlocutory review" would not seem to limit ASCR review of ALJ determinations.

At the least, the Court cannot say that "the plain language of the regulation or other

---

[6] The plain language of the regulations disposes of Wilkinson's argument that USDA General Counsel improperly "appealed" the liability determination. Under 7 C.F.R. § 15f.24, the ASCR "may review the proposed determination on his or her own initiative." Here, the Farm Services Agency filed a "request" for ASCR review, and the ASCR "decided to exercise [her] discretion to review" the liability determination. See Resp'ts' Mem., Exhibit 2, at 1-2. However the ASCR learned of the ALJ determination, she chose to exercise her regulatory discretion to reconsider it: this was not "plainly erroneous or inconsistent with the regulation." See Thomas Jefferson Univ., 512 U.S. at 512.

indications of the [agency's] intent" render impermissible the ASCR's review of the ALJ's liability determination. Orion Reserves, 553 F.3d at 707. USDA "is entitled to prescribe its own procedures," Robertson v. Fed. Election Comm'n, 45 F.3d 486, 491 (D.C. Cir. 1995), and "an agency's interpretation of its own regulations" receives "substantial deference," Thomas Jefferson Univ., 512 U.S. at 512. The Court cannot substitute its own view of the agency's procedures where, as here, those procedures do not contravene the plain language of the governing regulations. In the end, then, Wilkinson's argument certainly is not on such solid footing as to satisfy the very stringent test for mandamus relief. Wilkinson has not shown a "clear right" to the relief he seeks or that respondents have a "clear duty" to provide those damages under the applicable rules. Therefore, he has failed to state a claim for the "extraordinary remedy" of mandamus. See In re Cheney, 544 F.3d 311, 312 (D.C. Cir. 2008).[7]

## CONCLUSION

The Court must defer to the agency's interpretation of its regulations and hence to the procedures USDA used in considering the Wilkinsons' administrative complaint. Because Wilkinson has not stated a claim that would demonstrate a clear right to the relief he seeks, the Court dismisses without prejudice the verified petition for a writ of mandamus. A separate order accompanies this opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: October 29, 2009

[7] The Court expresses no position on the merits of the Wilkinsons' administrative complaint. Wilkinson may be able "to seek judicial review in the United States Court of Federal Claims or a United States District Court of competent jurisdiction" of the ASCR's final determination dismissing his parents' complaint. See 7 C.F.R. § 15f.26.

Copy to:
Wilbur Wilkinson
P.O. Box 142
Garrison, ND 58540